## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NORMA NAVARRO,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**FIRST STUDENT, INC., AND FIRST STUDENT MANAGEMENT, LLC,**<br><br>　　　　　Defendants. | Case No.　23-cv-04356<br><br>District Judge: Martha M. Pacold<br><br>Magistrate Judge: Jeffrey T. Gilbert |

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
### APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF
### CLAIMS PURSUANT TO F.R.C.P. 23 FOR SETTLEMENT

Plaintiff Norma Navarro ("Named Plaintiff") on behalf of herself and all others similarly situated ("Plaintiffs"), for this Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 for Settlement state as follows:

### I. INTRODUCTION

Plaintiffs seek preliminary approval of the Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement"), attached as Exhibit 1, that impacts the claims of approximately 1,974 people against Defendants First Student, Inc. and First Student Management, LLC (collectively, "Defendants"), (Plaintiff and Defendants collectively referenced herein as the "Parties"). Named Plaintiff alleges that Defendants did not properly calculate employees overtime wages. The Defendants deny the allegations. After extensive arm's length negotiations and exchange of payroll data, the Parties feel that they have reached a fair compromise and resolution of the claims.

1

For the reasons below, Plaintiffs respectfully request this Court to enter an order, in the form attached hereto as Exhibit 2 to this motion, and (1) grant preliminary approval of the proposed Class Action Settlement; (2) certify the Class for settlement purposes; (3) approve the proposed Notice (Exhibit D to the Settlement Agreement and Exhibit 3 to this motion); and (4) set a hearing date for Final Approval of Settlement ("Fairness Hearing"). In support of this motion, Plaintiffs state as follows:

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On July 6, 2023, Named Plaintiff filed a Class and Collective Complaint that is the subject of this settlement alleging violations of the Fair Labor Standard Act and Illinois Minimum Wage Law. The claims stem from allegations that Defendants failed to properly pay overtime wages when overtime was worked and various incentives earned during the same pay period.

The Parties engaged in an exchange of payroll data. From this collected data, Plaintiff analyzed pay data for all employees of Defendants for the three-year statutory period. This serves as the basis for this Class Settlement.

The Parties strenuously negotiated both monetary and non-monetary terms, including a mediation with mediator Michael Russel on February 28, 2025. The mediation was successful and the Parties came to an agreement in principle. Now, the Parties formalize the agreement to settle the claims on a Class basis.

## III. THE PROPOSED CLASS SETTLEMENT AND PROCEDURE

For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms:

Defendants have agreed to pay the Gross Settlement Amount of $525,000 to settle the claims in this Action, which shall be used to provide for (i) Settlement Payment for the Settlement

Class Members; (ii) a Service Award to the Named Plaintiff; (iii) Plaintiffs Counsel's attorney's fees and expenses, and (iv) payment for Settlement Administration. The Settlement Class includes the Named Plaintiff and the class members identified on the list attached as Exhibit A to the Agreement ("Class Members"). This list includes potential settlement members and their estimated gross and net pre-tax settlement awards (net awards accounting for proposed service award, attorney fees and costs, and administrator fees and costs). Plaintiffs' Counsel requests one-third of the settlement fund as an award of attorneys' fees and reimbursement of $6,032 in costs, which will come out of the $525,000 settlement payment.

This settlement concerns the claims of the 1,974 individuals identified on Exhibit A to the Settlement Agreement. These individuals are those who Plaintiff believes were not properly paid overtime wages.

**Damages Calculations:**

The overtime portion of settlement payments for Class Members was determined by reviewing Defendants' payroll records and calculating potential money owed for any unpaid overtime premiums to determine alleged damages (i.e. "base damages"). During this review, Plaintiffs' counsel also identified a much smaller issue regarding time for some meetings for some employees that affected overtime wages. Then an amount equal to the base damages was added as liquidated damages available pursuant to the FLSA and under the applicable 3-year limitations period. Another amount equal to base damages was added to account for treble damages available under the IMWL. Finally, a monthly penalty of 5% of the base damages per month was added to account for additional statutory damages available under the IMWL. In total, overtime damages added to $577,712.81 and $62,184.34, respectively ($639,897.16 total).

The Gross Settlement Fund was then apportioned across the Class Members based on a *pro rata* distribution based on each of their total calculated damages with a gross minimum award of $10.00 for any class member with any alleged damages. The Gross Settlement Fund of $525,000 represents a recovery of approximately 82% of all alleged unpaid overtime, and statutory damages available under the FLSA and IMWL. This settlement represents Class Members receiving gross awards of approximately 333% of unpaid overtime premiums.

The Parties' Settlement Agreement creates a Rule 23 Class with the option to opt-out of the class settlement. The procedure includes a process whereby Class Members receive notice of the settlement and are informed of their options to opt-out of the settlement or object to the settlement in writing and at the Fairness Hearing pursuant to Fed. R. Civ. P. 23(e). Class Members who do not opt-out will receive settlement checks for their Rule 23 allocation after the Effective Date. Any Rule 23 award funds attributed to Class Members who do not cash their settlement checks will have that amount allocated to the Illinois unclaimed property fund.

The average estimated gross settlement award is $265.96. The lowest gross award is $10 and $5,559.95. is the highest. Class Members are estimated to receive approximately 62% of their settlement awards after accounting for proposed attorney fees and costs, settlement administration costs, and service fee.

Class Members have 60 days from the mailing of the notices to opt-out or object to the settlement.

**Settlement Payment Schedule:**

To effectuate this Settlement, Defendant has agreed to pay the Gross Settlement Amount into the QSF within fourteen days of the Effective Date. Attorneys' Fees and Costs,

Administrative Costs and Service Awards will be paid solely from the QSF within fourteen days after this deposit. Class Members will have 180 days to cash their settlement checks.

Any Class Member who opts out of the settlement will not be entitled to their share of the settlement allocations, and they will not release any claims.

**Settlement Administrator Fees and Costs**:

The Parties have agreed to use Simpluris as the Settlement Administrator. The Administrator has estimated its fees at $13,765. The Administrator's fees will be paid from the Gross Settlement Fund.

**Attorney Fees and Costs**:

Class Counsel requests $175,000, which is one-third of the Gross Settlement Fund, as an award of attorney's fees. Class Counsel also seeks reimbursement of the reasonable and actual costs and expenses of $6,032.38 which were reasonably incurred in the litigation of this matter, from the Gross Settlement Amount. Such costs include but are not limited to the filing fee, deposition costs, mediation costs and other expenses.

**Service Award:**

Named Plaintiff seeks $5,000 as a Service Awards for the services rendered to the Class Members. Named Plaintiff spent considerable time working with her attorneys to advance the litigation in this matter, including providing information to her attorneys, and participating in the settlement mediation.

**Limited Release**:

In exchange for their respective Settlement Payments, the Class Members (excepting any persons who may choose to opt-out) are providing a release relating to their Federal and State

wage-related claims as set forth in the Settlement Agreement. Class Members are not signing a general release for non-wage claims.

**Notice**:

Notice to the Class Members will proceed by mailing through first class mail to each individual listed on Exhibit A to the Settlement Agreement, if available, and will include a copy of the Parties' Notice that details the approximate estimated amount of money that is proposed to be paid to that employee, the process for opting out of the Class, and for objecting to the Class and for appearing at the Fairness Hearing. The Parties' proposed Notice to the Class Members is attached to this motion as Exhibit D to the Settlement Agreement, attached hereto as Exhibit 3 to this motion.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (3d ed. 1992) (collecting cases).

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal Fairness Hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The court should grant preliminary approval of the settlement if it finds the proposed settlement to be within "a reasonable range" in which case it should authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal Fairness Hearing. *Armstrong v. Bd or Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980*)*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal Fairness Hearing, Class Members may be heard

and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

### The Criteria for Preliminary Settlement Approval Are Satisfied

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). In evaluating whether this burden is met, Courts in this District utilize a five-factor test to consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). A court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook v. McCarron,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (N.D. Ill. Jan. 22, 1997) (citation omitted).

1. **Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

Here, the Class Members are recovering the gross monetary equivalent of over 333% of alleged unpaid overtime, as calculated by Plaintiffs' Counsel. This is approximately 82% of the sum of (1) alleged unpaid overtime, (2) another equal amount representing FLSA liquidated

damages for the three years preceding the filing of the lawsuit; (3) another equal amount to account for IMWL statutory damages for all class members for the three years preceding the filing of the lawsuit; and (4) a monthly penalty of 5% of the base amount of unpaid overtime from the three years preceding the filing of this lawsuit.

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Plaintiffs believe that this case is an excellent result for Class Members. They are receiving more than the unpaid overtime. Plaintiffs also avoid having to litigate any disputes over class certification and Defendants' defenses to their claims. Defendants may argue that various bonus payments were discretionary or excluded from the regular rate analysis, that liquidated damages should not be awarded, that the claims are not appropriate for class certification, and that they should prevail on summary judgment. By settling these claims, Plaintiffs are assured of a certain

and prompt recovery without being required to expend the time and resources to brief class certification and summary judgment, nor assume the inherent risks and costs of a trial.

### 2.      Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would have continued to vigorously defend the case. As discovery was in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

### 3.      At This Preliminary Stage, There is No Opposition to the Settlement

Plaintiffs support the settlement, as do their Counsel and Defendants. At this preliminary stage, Plaintiffs' Counsel is unaware of any opposition to the settlement.

### 4.      Opinion of Counsel

Plaintiffs' Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the

Settlement. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. Additionally, although Defendants maintain their denial of the allegations raised by Named Plaintiff, Defendants and Defendants' counsel believe that the Settlement is fair, reasonable, and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

5.     **The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion.**

The Settlement was the result of adversarial, arm's length negotiations culminating in a mediation with an experienced mediator, Michael Russell[1]. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful

---

[1] https://milesmediation.com/neutrals/michael-russell/

discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). This Settlement was the result of undeniably adversarial litigation, arm's length negotiations. There is no evidence of even the slightest hint of "collusion." The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

### 6. The Criteria in the 2018 Amendments to Rule 23(e)(2) Are Also Met.

On December 1, 2018, Rule 23(e)(2) was amended to set forth a list of criteria a court must address in determining whether a settlement is fair, reasonable and adequate.[2] Fed. R. Civ. P. R 23(e)(2); *see also*, *Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2018 U.S. Dist. LEXIS 167471, at *10 (N.D. Ill. Sep. 28, 2018).

The goal of the Amendments was "not to displace" any factor previously relied upon by federal courts including those set forth above, but rather, to focus the court on core concerns that should guide its decision. 2018 Advisory Committee Notes, Fed. R. Civ. P. 23(e)(2). These factors have been met for similar reasons to those above. The class representative and class counsel have adequately represented the class by gathering and analyzing information from Defendant's own records. The proposal was negotiated at arm's length. The settlement treats class members equitably relative to each other – class members will each receive a *pro rata* share of settlement fund based on objective factors and the further damages were determined by actual payroll records.

---

[2] The factors in Amended Rule 23(e)(2) are: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; it treats class members equitably relative to each other; and the relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorney's fees; any agreements made in connection with the proposed settlement.

The proposed relief is adequate, considering the costs, risks, and delay of trial and appeal. The proposed method of distribution is also adequate. The proposed attorney fee award is reasonable.

## V. THE PARTIES PROPOSED NOTICE PROGRAM

The notice procedure identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23 in that it describes the case history and procedure, the settlement structure and calculation of damages, as well as clearly outlining each Class members' rights and options.

## VI. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

### A. Proposed Class Definition

The "Eligible Settlement Class Members" are defined as persons employed as hourly non-exempt employees by Defendants in Illinois between July 6, 2020 and November 16, 2024, who are identified in the payroll data produced by Defendants to Plaintiffs' Counsel, who Class Counsel has identified as having overtime damages and who are identified on Exhibit A to the Settlement Agreement.

**B.  The Plaintiffs Class Meets All Four Requirements of FRCP 23(a).[3]**

**1.  Numerosity**

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable.  Fed. R. Civ. P. 23(a)(1).  There are 1,974 Class members, and this meets the numerosity standard. *Anderson v. Weinert Enterprises, Inc.,* 986 F.3d 773, 778 (7th Cir. 2021) ("Our cases have recognized that "a forty-member class is often regarded as sufficient to meet the numerosity requirement" but "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder"). The practicality of joinder depends on "the nature of the action, the size of the individual claims, and the location of the members of the class[.]" *Id.*  Here, the number of potential class members who purportedly were not properly paid overtime wages is well over the "benchmark numerosity threshold." *See id.* Moreover, the average settlement award is significant, the average net award over $200. As such, because of the size of the class and the impracticability of joinder, the numerosity standard is met.

**2.  Commonality**

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class."  "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011).  "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.  "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*

---

[3] Although Defendants have consented to certification for settlement purposes, Defendants reserve all rights to challenge whether certification is proper should this Court deny approval of the settlement

*v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common question here is whether Defendants properly paid overtime wages to employees and these questions are common to each member of the Class.

### 3. Typicality

Plaintiffs in this case meet the typicality requirement because all employees, including the named plaintiff, were subject to the same policies all of which were set by Defendant, namely that they allegedly would not be paid overtime for hours worked over forty in a work week and cash payments were not reported on information returns. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Defendants utilize some similar payroll policies across the Class Members. As such, Plaintiff's overtime claims arise out of the same course of conduct and the same payment practices.

### 4. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts determine adequacy in two parts: (1) the plaintiff's ability to ensure vigorous advocacy on behalf of the class without interests antagonistic to the class; and (2) the adequacy of the named plaintiff's counsel to fairly and adequately represent the interests of the class. *Haschak v. Fox & Hound Rest. Grp., et al.*, No. 10 C 8023, 2012 U.S. Dist. 162476, at * 8 (N.D. Ill. Nov. 14, 2012).

In the instant case, Named Plaintiff worked for Defendant and alleged that she suffered from overtime underpayments as a result of the same allegedly unlawful practice as all other non-exempt employees. Named Plaintiff has been cooperative throughout this litigation. The Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Named Plaintiff's wage claims pose no conflicts whatsoever with those of the other Class Members because her claims and those of the entire Class turn on the existence and implementation of certain of Defendants' wage policies. Therefore, Named Plaintiff's financial interests are not in conflict with those of other Class Members and her overtime claims are similar to those of the rest of the class. The Named Plaintiff has no interests antagonistic to the class – her interests and damages in this matter are similar to those of the proposed Class members.

Plaintiffs' counsel is competent and experienced and fully able to conduct this litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action litigation is a factor favoring counsel's qualification, general litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Workplace Law Partners P.C. have substantial experience in employment litigation and class action litigation. Outlined herein is the work counsel has performed to identify the potential class claims. Additionally, a firm resume for Workplace Law Partners P.C. is attached to this Motion as Exhibit 4 that demonstrates the requirements of Rule 23 are met, including 1) class counsel's experience in handling complex litigation and class actions; 2) counsel's knowledge of the applicable law; and 3) the resources that class counsel will commit to representing the class as demonstrated in other similar litigation. Fed. R. Civ. P. 23(g).

## C. Plaintiffs Meet the Requirements of FRCP 23(b)(3).

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

### 1. Predominance

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g., Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986) ("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issues are whether Defendant properly paid overtime wages. The analysis of whether of these issues is the same for all potential Class Members. The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common

liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798,

12 c 1274 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid

work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

### 2. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as

a class action. When inquiring into the matters pertinent to the findings of predominance and

superiority, the court must examine the interests of the class members in individually controlling

a separate action, the extent and nature of any litigation already commenced by class members, the

desirability of the forum and the difficulties likely to be encountered in the management of a class

action. Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate just below 2,000 identical lawsuits in separate

actions. Because of the uniformity of the factual and legal claims of the Class members, it would

be needlessly repetitive if the Class members were forced to prosecute their claims individually.

A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties

and expense of prosecuting this type of litigation would be counterproductive for both Parties.

With multiple claims, Defendants' legal expenses (owed to attorneys for both sides) could be

greater than the overall damages at stake in the class action.

### VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant the Motion for

Preliminary Approval of the Proposed Settlement and enter the Order hereto as Exhibit 2.


Dated: October 17, 2025,                    Respectfully Submitted,


                                            By: /s/ John Kunze_____
                                            One of Plaintiffs' Attorneys

John Kunze
Workplace Law Partners P.C.
155 N. Michigan, Suite 719
Chicago, IL 60601
(312)861-1800
kunze@fishlawfirm.com